Appeal No. 2024-2107
(Serial No. 16/231,749)

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IN RE: BRIAN DAVID MCFADDEN,
APPELLANT.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board

CORRECTED COMBINED BRIEF AND SUPPLEMENTAL APPENDIX FOR APPELLEE—
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

FARHEENA Y. RASHEED
Solicitor

AMY J. NELSON
Deputy Solicitor

MONICA B. LATEEF
KAKOLI CAPRIHAN
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the*
*United States Patent and Trademark Office*

December 27, 2024

**REPRESENTATIVE CLAIMS ON APPEAL**

10.     A social network system, comprising:

a post or other equivalent information item from a first user of the social network;

a subsystem configured to use the method of claim 1 to determine an include region for a second user of the social network;

a module capable of using the include region to determine inclusion of the post into a news feed or equivalent information stream directed to the second user.

Appx32.

18.     An information exchange apparatus for generating an include region comprising:

a distribution of information items;

a subsystem configured for processing a region of the distribution to:

(a) determine a number of items for the region,

(b) determine an expected item value for the region,

(c) compute a metric for the region, wherein the metric computation depends on the expected item value and the number of items; and

a module for selecting the include region, wherein the include region is preferred over other regions of the distribution at least in part according to the metric.

Appx33-34.

# **TABLE OF CONTENTS**

Statement of Related Cases ........................................................................ iv

I.  Statement of Jurisdiction ................................................................1

II.  Statement of the Issue...................................................................1

III.  Statement of the Case ...................................................................2

    A.  The Claimed Invention: System and Apparatus for Controlling and Optimizing Information Distribution Between Users in an Information Exchange Through Software .............................................3

    B.  The Board's and Examiner's Findings.................................................7

    C.  The Board's Decision on Rehearing ...................................................9

IV.  Summary of the Argument ...........................................................11

V.  Argument ....................................................................................13

    A.  Standard of Review .........................................................................13

    B.  The Board Properly Determined That Claims 10–18 Are Patent-Ineligible Because They Encompass Software Per Se.......................14

VI.  Conclusion ..................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allvoice Devs. US, LLC v. Microsoft Corp.*,
    612 F. App'x 1009 (Fed. Cir. 2015) ...................................................17, 18, 19

*DigiTech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014) .................................................7, 14, 16, 17, 19

*In re Donaldson Co.*,
    16 F.3d 1189 (Fed. Cir. 1994) ..........................................................................20

*Enfish LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ..................................................................19, 20

*In re Ferguson*,
    558 F.3d 1359 (Fed. Cir. 2009) ........................................................................14

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) ........................................................................13

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019) ................................................................9, 12, 16

*In re Marco Guldenaar Holding B.V.*,
    911 F.3d 1157 (Fed. Cir. 2018) ........................................................................13

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007)......................................................................................8, 19

*In re Nuijten*,
    500 F.3d 1346 (Fed. Cir. 2007) ..................................................................14, 19

*In re Warmerdam*,
    33 F.3d 1354 (Fed. Cir. 1994) ..................................................................8, 14, 19

*In re Watts*,
    354 F.3d 1362 (Fed. Cir. 2004) ........................................................................13

## Statutes

28 U.S.C. §1295(a)(4)(A) ........................................................................1

35 U.S.C. § 101 .............................................................................*passim*

35 U.S.C. § 112(b) ................................................................................2

35 U.S.C. § 112(f)..............................................................................20

## Other Authorities

Manual of Patent Examining Procedure § 2106.03 ..................................8

Manual of Patent Examining Procedure § 2106.03(I) ...........................14

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal in connection with the patent application at issue in this appeal that has previously been before this Court. The Director is also unaware of any other cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## I.     STATEMENT OF JURISDICTION

The Patent Trial and Appeal Board issued its Decision on Appeal on October 3, 2023, and issued its Decision on Rehearing on April 2, 2024. Appx1-24. Appellant timely filed a Notice of Appeal on June 4, 2024. SAppx1. This Court has jurisdiction under 28 U.S.C. §1295(a)(4)(A).

## II.     STATEMENT OF THE ISSUE

McFadden's pending claims 10-18 recite systems and apparatuses for regulating the flow of information between online content producers and consumers through software. Specifically, representative claim 10 recites a "social network system" comprising a "subsystem" and a "module," which processes social network posts from producers and determines if those posts are to be included in the news feeds of consumers. Representative claim 18 recites an "information exchange apparatus" comprising a "subsystem" and a "module," which analyzes information items, assesses their relevance or popularity, and identifies the most valuable content for sharing. Neither of these claims, nor any of the remaining system and apparatus claims, recites any hardware or physical component for implementing these functions. Likewise, the specification describes software alone, without hardware or physical components, for performing the claimed functions.

The Board affirmed the Examiner's rejection of claims 10-18 under 35 U.S.C. § 101, agreeing with the Examiner that the claims recite only intangible software

1

without any physical components, such as computers, CPUs, memory, or a computer-readable storage medium, and thus do not fall within a statutory category of eligible subject matter. Even accepting McFadden's assertion that claim 18 contains means-plus-function claim terms, the Board found that the specification fails to describe corresponding structures that would qualify the apparatus claim as something other than intangible software.

The sole issue on appeal is whether the Board correctly determined that claims 10-18 are directed to software per se and thus fail to fall within a statutory class of patent eligible subject matter under 35 U.S.C. § 101.

## III.    STATEMENT OF THE CASE

On December 24, 2018, McFadden filed the instant patent application, entitled "System and Methods for Controlling and Optimizing Information Distribution Between Users in an Information Exchange, Continued." Appx60-94. The Patent Trial and Appeal Board affirmed the Examiner's rejection of claims 10-18 under 35 U.S.C. § 101 as being directed to non-statutory subject matter. Appx1-12; Appx271-287; Appx165-190.[1] McFadden sought rehearing (Appx316-322), which the Board considered and denied. Appx14-24. This appeal followed.

---

[1] The Board also affirmed the Examiner's rejection of claims 10-17 under 35 U.S.C. § 112(b) and reversed the Examiner's anticipation and obvious rejections as to the remaining claims, claims 5-26. *See* Appx11. The Director is not defending the indefiniteness rejection before this Court.

A.    **The Claimed Invention: System and Apparatus for Controlling and Optimizing Information Distribution Between Users in an Information Exchange Through Software**

McFadden's application is directed to an automatic control system designed to regulate the flow of information between information producers[2] (those who create or share information) and information consumers[3] (those who receive that information). SAppx2 (Abstract); Appx72. The specification describes the disclosed system as "computer coded software operating on a computer system." Appx74.

The system is referred to as an "information exchange" or as a separate subsystem interacting with an "information exchange." Appx72. The specification describes this information exchange as an environment that facilitates the flow of information between producers and consumers. *Id.* In particular, the system decides whether to include or exclude producers' information from consumers' information streams. SAppx2 (Abstract); Appx79; Appx86-90; *see also* Appx67 (FIG. 5, decision matrix). It also allows consumers to provide preferences and priorities for the type of information they see and an administrator to adjust the system's goals based on those inputs. SAppx2 (Abstract); Appx73. The system uses user behavior, past activities, and producer targets to manage the flow of information. Appx75;

---

[2] Referred to as the "first user" in claims 10, 11, and 15-17. *See* Appx32-33.

[3] Referred to as the "second user" in claims 10, 11, and 15-17. *Id.*

3

Appx83-84. A distributor manages this flow of information between producers and consumers, controlling what content reaches whom and under what conditions. Appx72; Appx74. It also accounts for factors like changes in the state of the system and uncertainty in predicted preferences to improve the system's efficiency. Appx82-83; Appx84-85. In simple terms, the system ensures that consumers get their preferred quantity and type of information based on their interests such that producers can better target consumers. SAppx2 (Abstract); Appx75-76.

Specifically, the system helps a consumer find the best "include region" (the space where information is shown) by analyzing data from multiple sources. Appx84-85. It starts by using a participation prediction map, which predicts how likely the consumer is to engage with certain information based on the consumer's past behavior. Appx83. Subsystems within the system process and regulate these predictions, helping to fine-tune how content is distributed and consumed. Appx74. The system then looks at a distribution of information items, which includes information shared by producers, to figure out where the most relevant content can be pulled from. Appx83.

When a producer posts something—like news, an article, an audio clip, or a video—the post becomes an information item in the distribution. Appx72-73. For each region in the distribution, the system evaluates three things: (a) how many posts or items are in that region, (b) how valuable those items are expected to be, and (c)

how closely those items match what the consumer, who might see the post, typically engages with. Appx83-84. This is measured using a proximity calculation, which checks how well the post's value aligns with the consumer's participation level. Appx81-86. The system compares the value of the post to the consumer's preferences and adjusts accordingly. Appx72; Appx80. If the consumer regularly interacts with similar content, the post is prioritized and more likely to appear in the consumer's feed. Appx72; Appx81-83. Finally, the system picks the include region, which contains the best mix of valuable posts and high likelihood of user engagement. Appx81; Appx84-85.

Independent claim 1, which is not at issue in this appeal, but is referenced in claim 10, recites:

> 1.    An information exchange method for determining an include region for an information consumer, comprising:
>
> a participation prediction map;
>
> a distribution of information items;
>
> determining for a region of the distribution:
>
>> (a) a number of items,
>>
>> (b) an expected item value,
>>
>> (c) a measure of proximity, wherein the measure is between (a) and a participation level determined from the participation prediction map for (b), or between (b) and an item value determined from an inverse of the participation prediction map for (a); and

selecting an include region, wherein said include region is preferred over other regions of the distribution at least in part according to the measure of proximity;

whereby the include region for the information consumer is determined.

Appx30.

Representative claims 10 and 18 recite:

10.    A social network system, comprising:

a post or other equivalent information item from a first user of the social network;

a subsystem configured to use the method of claim 1 to determine an include region for a second used of the social network;

a module capable of using the include region to determine inclusion of the post into a news feed or equivalent information stream directed to the second user.

18.    An information exchange apparatus for generating an include region comprising:

a distribution of information items;

a subsystem configured for processing a region of the distribution to:

(a) determine a number of items for the region,

(b) determine an expected item value for the region,

(c) compute a metric for the region, wherein the metric computation depends on the expected item value and the number of items; and

a module for selecting the include region, wherein the include region is preferred over other regions of the distribution at least in part according to the metric.

Appx32; Appx33-34.

## B.    The Board's and Examiner's Findings

The Board affirmed the Examiner's rejection of claims 10-18 under 35 U.S.C. § 101. Appx5-7; Appx11. The Examiner determined that "[c]laims 10-14 are system claims depending on the method [of] claim 1; however, the claims lack any hardware structure to be considered as system claims." Appx169. The Examiner further determined that the claims "are considered as software which do not fall within at least one of the four categories of patent eligible subject matter recited in 35 U.S.C. 101 (process, machine, manufacture, or composition of matter)." *Id*. The Examiner made the same determination as to the apparatus claims, claims 15-18. *Id*.

The Board was unpersuaded by McFadden's arguments that "the systems and methods described in the Specification and claims [10-18] represent improvements to existing technological processes" and that "[i]t would be self-evident to the skilled person that the claims [10-18] taken as a whole fall within a statutory category." Appx5 (citing Appx248-249). In affirming the Examiner's rejection, the Board noted that, aside from process claims, all categories of patent eligible subject matter (i.e., machine, manufacture, composition of matter) "'must exist in some physical or tangible form.'" Appx5-6 (quoting *DigiTech Image Techs., LLC v. Elecs. for*

7

*Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014)). And the Board explained that "[i]t is well settled that '[a]bstract software code is an idea without physical embodiment.'" Appx6 (quoting *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 449 (2007); citing *In re Warmerdam*, 33 F.3d 1354, 1361 (Fed. Cir. 1994)). The Board found that McFadden's system claims and apparatus claims lack any hardware structure and are therefore directed to "'software per se,' i.e., a product without any structural recitations." Appx5 (citing Manual of Patent Examining Procedure ("MPEP") § 2106.03). That is, the claims recite only software concepts without any physical or tangible form. Appx6-7. The Board observed that claims 10-18 do not tie the limitations to hardware like circuitry, computers, CPUs, memory, or computer-readable storage medium, nor do they use the words "means" or "step" to tie the claim limitations to any hardware structure described in the specification. *Id*. The Board thus agreed with the Examiner that representative claim 10, which recites a system comprising a post (i.e., an information item), a subsystem to determine an include region, and a module to determine inclusion of a post in a news feed, does not recite any hardware structure. Appx7. The Board determined that a similar analysis applies to the remaining independent claims (claims 12-13 and 15-18). *Id*. Therefore, the Board sustained the Examiner's rejection.

### C.    The Board's Decision on Rehearing

The Board granted McFadden's request for rehearing to the extent that the Decision was considered in light of McFadden's arguments. Appx14-15. However, the request was otherwise denied and the Decision was not modified in any respect. Appx15-20; *see also* Appx23.

The Board was again unpersuaded by McFadden's argument (Appx319-320), relying on *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019), that the claims represent improvements to existing systems and thus fall within a statutory category. Appx20. The Board found that McFadden did not explain the relevance of *Koninklijke* to establishing that the Board misapprehended or overlooked any point of law relevant to its Decision on Appeal. Appx20.

The Board also rejected McFadden's argument that the Board misapprehended or overlooked that the preambles of claims 10-17 are directed to specific types of information exchange systems. Appx19. In its rehearing request, McFadden contended that such an information exchange is "a physical entity 'consisting of parts, or of certain devices and combination of devices'" and thus exists in physical and tangible form. Appx319 (emphasis omitted). The Board observed that McFadden's argument did not identify a point misapprehended or overlooked in the Decision on Appeal. Appx19. In that decision, the Board

explained, it already considered McFadden's argument that the systems and apparatuses recited in claims 10-18 represent improvements to existing technological improvements. Appx19 (citing Appx5). The Board further explained that the Decision on Appeal determined that the preambles of claims 10-17 did not specify any physical components or hardware, such as circuitry, CPUs, memory, or computer-readable media. Appx19. Instead, the claims described software functions without tangible structure. *Id*. The Board reiterated its finding that claims 10-17 constitute software per se and do not qualify as a concrete thing made up of devices or parts. *Id*.

Finally, the Board addressed McFadden's argument that it misapprehended or overlooked that claim 18 is written in means-plus-function language. Appx15-19; Appx317-318. Specifically, McFadden asserted that the preamble of claim 18 is directed to an information exchange which is "a class of special purpose computer systems and an existing technology" and that a person of ordinary skill in the art would recognize that claim 18 represents improvements to this class of special purpose computer systems. Appx318. The Board found that even if claim 18 were construed to include means-plus-function claim language, the specification lacks any specific hardware structure that would change the interpretation of claim 18 to mean something other than software per se. Appx16-19. In particular, the Board determined that the pages of the specification cited by McFadden to support the

claimed "information exchange" (i.e., pages 3, 5, and 12, and Figures 1 and 8) describe software functions and do not point to any physical structure or components. Appx16-17. The Board noted that the specification only references intangible computer systems and processes, and even the claimed "subsystem" for processing data is purely software-based. Appx18. Likewise, the Board found that the portions of the specification McFadden cited to support the claimed "subsystem" (i.e., pages 13, 14, 15, 16, and 18) also simply describe software functions and do not point to any physical structure or components. *Id.* As a result, the Board maintained that claim 18 is software per se and does not meet the statutory requirements of 35 U.S.C. § 101. *Id.* The Board also rejected McFadden's arguments about the "information exchange system" being "misapprehended or overlooked." Appx18-19. The Board explained that claim l8's recitation of an "information exchange system" had already been considered and rejected in the Decision on Appeal, and no new issues were overlooked. *Id.* Thus, the Board upheld the Examiner's § 101 rejection of claims 10-18. Appx19-20.

## IV.    SUMMARY OF THE ARGUMENT

The Board correctly determined that claims 10-18 are patent ineligible under 35 U.S.C. § 101. While the claims are drafted as system or apparatus claims, the Board rightly observed that they recite only software that regulates the flow of information between producers and consumers without specifying any hardware

components or physical structures. That is, the claims are directed to software per se absent any physical or tangible form, and therefore do not fall within one of the statutory categories of patent eligible subject matter.

Each of McFadden's four arguments fails to establish error in the Board's decision. First, his argument, relying on *Koninklijke*, that his claims represent technological improvements to existing systems is misplaced. The issue here is not whether the claims are directed to an abstract idea or to a technological improvement, but whether they fall within a statutory category, such as a machine or manufacture, which requires a physical or tangible form. The Board rightly determined that McFadden's systems and apparatus claims recite only intangible software, not hardware, and thus do not fall within a statutory category.

Second, McFadden wrongly asserts that the Board ignored additional components in the claims, such as information exchanges, subsystems, and modules, which he contends are physical. The Board considered these components but determined that they are described in purely functional terms, and there is no indication in the claims or the specification that they are tied to any hardware or physical structure. Because the claims remain untethered to any tangible embodiment, the Board rightly determined that they do not qualify as a machine or manufacture under § 101, as is required for a system or apparatus claim.

12

Third, McFadden's argument that software inherently requires hardware to operate, and therefore his claims should be patentable even without explicit reference to hardware can't be squared with *Allvoice*, which declined to import or imply a tangible medium when the claims failed to reference one. Like the claims in *Allvoice*, McFadden's claims fail to specify any physical medium, and the Court should not infer one.

Finally, McFadden incorrectly asserts that claim 18 is patent eligible because it is written in means-plus-function format. The Board properly determined that even if claim 18 is interpreted as including means-plus-function claim terms, the specification fails to describe any corresponding hardware or physical structure that would support patent eligibility. Thus, the Board correctly concluded that claim 18 is patent ineligible as directed to software per se.

## V.    ARGUMENT

### A.    Standard of Review

McFadden has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Patent eligibility is a question of law that may contain underlying issues of fact. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). This Court reviews the Board's ultimate conclusion on patent eligibility de novo and any required fact finding for substantial evidence. *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1159 (Fed. Cir.

2018).

### B.     The Board Properly Determined That Claims 10–18 Are Patent-Ineligible Because They Encompass Software Per Se

The Board correctly concluded that claims 10-18, which are directed to systems and apparatuses, are patent-ineligible under 35 U.S.C. § 101 because they merely recite software per se and do not recite any tangible components. Appx5-7; Appx15-20.

In § 101, the Patent Act defines four categories of patent eligible subject matter: processes, machines, manufactures, and compositions of matter. 35 U.S.C. § 101. For each of the latter three categories—machines, manufactures, or compositions of matter—the claimed subject matter must exist in some physical or tangible form. *Digitech*, 758 F.3d at 1348-49. Thus, a claim drafted as a product claim, but which recites a software program without at least one structural limitation, has no physical or tangible form and is a claim to "software per se," which does not fall within any statutory category of patent eligible subject matter. MPEP § 2106.03(I); *see also In re Warmerdam,* 33 F.3d at 1361 (holding that a claim to a "data structure" is not patentable subject matter because "the claim is not one of the categories of subject matter recited in § 101"); *In re Ferguson,* 558 F.3d 1359, 1366 (Fed. Cir. 2009) (holding that Ferguson's claims to a "paradigm" were "unpatentable as not directed to statutory subject matter" because they did not fall within any statutory category); *In re Nuijten,* 500 F.3d 1346, 1357 (Fed. Cir. 2007) (holding

14

that the four categories recited in Section 101 "define the explicit scope and reach of subject matter patentable under 35 U.S.C. § 101" and that Nuijten's claims to a signal therefore "cannot be patentable subject matter").

Here, the Board properly determined that system and apparatus claims 10-18 fail to recite any hardware structure, such as circuitry, computers, CPUs, memory, or a computer readable storage medium, and therefore are directed to software per se and do not fall within a statutory class of eligible subject matter. Appx5-7; Appx16-19. Although claim 10 recites a "subsystem" and "module" and claim 18 recites an "information exchange apparatus," the Board rightly determined that neither the claim language nor the specification indicates that the terms implicate anything other than software. Appx7; Appx16-18. Those claim terms are not tied to any tangible structure, such as the memory they would be stored on, or the processor that would execute them. Appx32-34 (claims 10-18); Appx7; Appx16-18. Indeed, the specification corroborates that the invention is rooted in software, not hardware, explaining, "the system is computer coded software operating on a computer system." Appx74. Since claims 10-18  recite only software functions without any physical structure, the Board properly considered them to be software per se and not eligible for patent protection under § 101. Appx5-7; Appx16-19.

McFadden argues that the claims are not software per se for four reasons. Br. at 12-17. But each argument fails to pass muster.

First, McFadden argues that the claims are not software per se because the systems and apparatuses recited in claims 10-18 represent improvements to existing technologies such as a social network, advertising system, publishing system, and information exchange apparatus. Br. at 12-17. He argues that "[a] claim that is directed to improving the functionality of one tool . . . that is part of an existing system . . . does not necessarily need to recite how that tool is applied in the overall system . . . in order to constitute a technological improvement that is patent-eligible." Br. at 17 (citing *Koninklijke*, 942 F.3d at 1151). McFadden's argument and reliance on abstract-idea case law, such as *Koninklijke,* is misplaced because it assumes that the claims have met the threshold requirement for patent eligibility: falling within one of the categories of patent eligible subject matter. The Board never got to the question of whether the claims are directed to an abstract idea as opposed to a technological improvement, because the Board determined that the claims fail at the very first step: they fail to fall within a statutory category of machine, manufacture, or composition of matter, which require some physical or tangible structure. *Digitech*, 758 F.3d at 1349. Thus, while McFadden purports that the claims improve the functionality of existing technology, the claims fail to recite any hardware that the "improvements" are applied to.

As the Board found, the claimed social network, advertising system, publishing system, and information exchange apparatus are not themselves physical

structures; rather, they are computer-based intangibles. *See* Appx5; Appx16-17; Appx19-20. The specification states that the social network "could be a social network, a group within a social network, a list server, a news aggregation service, a news feed, a newsletter, a digest, offers, alerts, an ad exchange, an ad network, email client, news reader, web browser, portal or any service that facilitates a flow of information items from producers to consumers." Appx72. The specification further states that the information exchange system "is computer coded software operating on a computer system." Appx74. As for the advertising and publishing systems, the specification does not even explicitly mention them, much less describe them as physical structures. *See generally* SAppx2; Appx64-94. According to McFadden, "since software requires hardware to produce a result, and if that result provides an improvement to an existing technology . . . the claim cannot be non-statutory." Br. at 4-5. But this is not the law. Non-process claims must exist in some physical or tangible form to be statutorily eligible. *Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1017-18 (Fed. Cir. 2015) (citing *Digitech*, 758 F.3d at 1348–50). Thus, for a claim to be directed to a patent-eligible improvement it first must recite a tangible structure.

Second, McFadden argues that the Board disregarded the additional components of claims 10-17. Br. at 14. For example, he claims that the Board disregarded claim 10's preamble reference to a social network system and the

claim's further references to two additional components: a subsystem and a module. *Id*. McFadden's argument lacks merit because, in claim 10 and in the specification, the sub-system and module are described only in functional terms, with no indication that they are tied to any hardware or physical structure. *See* Appx32 (claim 10); Appx74 (stating that "the distribution sub-system 52 processes the information item 24, audience targets 50, a set of metrics 54, user profiles from the user profile storage 62, and selections criteria from the selection criteria storage to determine what consumers should get, receive, or view the information item."). Indeed, the specification does not explicitly mention a module, let alone describe it as having a physical structure. Thus, the Board properly found that without any claimed hardware implementation, these components remain software per se. Appx6-7; Appx18-19; *see also Allvoice Devs.*, 612 F. App'x at 1017 (finding that the software claims did not recite a process or tangible or physical object, and thereby holding that the claims do not fall within any of the categories of eligible subject matter). In addition, even though the preamble of claim 10 recites a social network system, the specification refers to a "social network" only twice and neither time in conjunction with computer hardware or other physical components. Appx70; Appx72. And claim 10 itself does not indicate that the social network system physically exists or interacts with hardware. Accordingly, contrary to McFadden's argument, the Board correctly determined that claims 10-17 are directed to software modules per se given

the absence of any tangible system as required for statutory eligibility. *See Microsoft*, 550 U.S. at 449; *In re Warmerdam*, 33 F.3d at 1361; *Allvoice Devs.*, 612 F. App'x at 1018.

Third, McFadden argues that "software requires hardware to produce a result" (Br. at 4-5) and under *Enfish*, claims 10-17 do not need to make explicit reference to hardware, such as circuitry, computers, CPUs, memory, or computer-readable storage medium. Br. at 14-15 (citing *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016)). With respect to McFadden's assertion that software inherently or impliedly requires hardware (Br. at 4-5), this Court has previously declined to import or imply a tangible medium into claims that fail to reference any such medium. *Allvoice Devs.*, 612 F. App'x at 1016-17 (citing *Digitech.*, 758 F.3d at 1348; *In re Nuijten*, 500 F.3d at 1354). Like the claims in *Allvoice*, McFadden's claims 10-18 fail to reference a tangible medium. As such, the Court will not import a tangible medium into these claims, and they remain software per se. In addition, this Court's *Enfish* decision is inapposite. In *Enfish*, this Court held that a self-referential table that improved the performance of computer memory was not an abstract idea. *Enfish,* 822 F.3d at 1334-1339. And *Enfish* acknowledged that there is no categorical ban on software patents. *Id.* at 1339 (explaining that patentable "improvement[s]" are not limited to improvements in hardware). But, as discussed above, whether McFadden's claims are directed to an abstract idea or to an

19

improvement in computer technology was not the issue before the Board. Instead, the Board was grappling with the more fundamental issue of whether McFadden's system and apparatus claims recite a physical or tangible structure such that they fall within one of the statutory categories for patent eligible subject matter. As explained above, they do not.

Fourth, McFadden argues that claim 18 cannot be software per se because it is written in a means plus function format. Br. at 16-17 (citing *Enfish.*, 822 F.3d at n.3). McFadden's argument lacks merit because means-plus-function language alone does not automatically make a claim patent-eligible. Claims are construed to cover the structure described in the specification. *In re Donaldson Co.,* 16 F.3d 1189, 1195 (Fed. Cir. 1994). And the Board rightly determined that, even accepting McFadden's argument that claim 18 includes means-plus-function claim limitations, the specification describes only software without any associated physical structures to perform the claimed functions. Appx16-18; *see also* Appx33-34; *see generally* SAppx2; Appx64-94. Specifically, the Board accepted McFadden's assertion (Appx317-318) that claim 18's "information exchange apparatus *for*" and "subsystem *configured for*" invoked § 112(f), but found no support in the specification for McFadden's assertion that these terms refer to a physical structure. Appx33-34 (emphasis added); Appx16-18. Therefore, the Board properly concluded that without any physical structure described in the specification, apparatus claim 18

is to software per se and does not fall within one of statutory categories of patent eligible subject matter. *Id.*

## VI.    CONCLUSION

The Board correctly determined that claims 10-18 fail to recite any physical or tangible structure, and thus are directed to software per se and are not patent-eligible pursuant to 35 U.S.C. § 101. This Court should affirm the Board's decision.

Respectfully submitted,

December 27, 2024

/s/ Monica B. Lateef
FARHEENA Y. RASHEED
*Solicitor*

AMY J. NELSON
*Deputy Solicitor*

MONICA B. LATEEF
KAKOLI CAPRIHAN
*Associate Solicitors*

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the*
*United States Patent and Trademark Office*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. Cir. R. 32(b). The total number of words in the foregoing brief, excluding table of contents and table of authorities, is 4,590 as calculated by Microsoft Word® software program.

/s/ Monica B. Lateef
MONICA B. LATEEF
*Associate Solicitor*
United States Patent & Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450

# SUPPLEMENTAL APPENDIX

**Appeal No. 24-2107**
***In Re: BRIAN DAVID MCFADDEN***
*****

## Index to Appellee's Supplemental Appendix*

| Date | Document | Page No. |
|---|---|---|
| 06/04/2024 | Notice of Appeal to the Court of Appeals for the Federal Circuit | SAppx1 |
| 12/24/2018 | U.S. Patent Application No. 16/231,749 - Abstract | SAppx2 |

\* None of the documents included in the Supplemental Appendix have an identifying designation in the reviewing tribunal. All documents are from the prosecution history of U.S. Patent Application No. 16/231,749, which does not include an identifying designation for its documents.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Brian D. McFadden

Application No.: 16/231,749

Art Unit:   2159
Examiner:  ALMANI, MOHSEN

Filed:  December 24, 2018

For:   System and Methods for Controlling and
      Optimizing Information Distribution Between
      Users in an Information Exchange, Continued

**Filed via Email efileSO@uspto.gov**
Office of the General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450

**Copy to: Patent Trial and Appeals Board**
Mail Stop PATENT BOARD,
Patent Trial and Appeal Board
United States Patent and Trademark Office
PO Box 1450, Alexandria, Virginia 22313–1450

## NOTICE OF APPEAL TO THE COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Notice of appeal to the Court of Appeals for the Federal Circuit from the decision of the Patent Trial and Appeal Board after the rehearing of appeal 2022-004579 for patent application 16/231,749 with notification date of April 2, 2024 is hereby given.

This notice is timely filed in accordance with 37 C.F.R. 90.3 (a)(1), and in accordance with 35 U.S.C. 141 (a), 37 C.F.R. 90.2 (a), and the rules of the Court of Appeals for the Federal Circuit.

Dated: June 4, 2024

Respectfully submitted,

/Brian D McFadden/

Brian D McFadden
Applicant/Appellant

11301 S Dixie Hwy #566132
Miami, FL 33256-6132

USPTO Customer Number: 113654
Phone:  212-920-4871
Email: mcfadden@ah-corp.com

# Abstract

An automatic control system for regulating the information exchange between information producer and information consumer.  One control mechanism can dynamically refine the decision to include or exclude information items from the consumer information stream to improve success metrics like participation.  One or more system interface request control mechanisms can dynamically provide incentive and limits for the input of audience targets, priorities, preferences, and other data.  An administrator may set parameters and select success metrics to balance the goals of the information exchange participants and stakeholders. The system can also serve to resolve conflicts between the selection criteria of a consumer and the audience targets of a producer.